# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
                                )
                                )    **ID No.: 1506014357**
   v.                    )
                                )
                                )
**STEVEN KELLAM**,     )
                                )
   Defendant.        )

Submitted: April 8, 2024
Decided: May 22, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Defendant's Motion for Postconviction Relief (R-1)*
**GRANTED IN PART AND DENIED IN PART**

*Kathryn Garrison, Esquire*, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for State of Delaware.

*Zachary A. George, Esquire*, Hudson Jones Jaywork & Fisher, LLC, 225 South State Street, Dover, DE 19901; Attorney for Defendant Steven Kellam.

**JONES, J.**

## Procedural Background

On June 22, 2015, an indictment against Steven Kellam ("Mr. Kellam" or "Petitioner") was returned by the Grand Jury. Count 1 alleged Criminal Racketeering.[1] Count 2 alleged Conspiracy to Commit Racketeering.[2] It was alleged that Mr. Kellam participated in a criminal enterprise through a "pattern of racketeering activity." The "pattern of racketeering activity" was outlined in five sub-paragraphs to Count 1. In the indictment, the State relied upon five predicate events to establish a pattern:

(1) the January 13, 2014 murders of Cletis Nelson and William Hopkins;

(2) the May 18, 2014 home invasion of Isaiah Phillips;

(3) the August 22, 2014 home invasion of Ashley Moore;

(4) the December 11, 2014 home invasion of Milton Lofland; and

(5) the December 14, 2014 home invasion of Azel Foster.

The original indictment also included independent charges that corresponded to all the alleged predicate events.

An Amended Indictment was filed on September 1, 2017; a second Amended Indictment was filed on September 15, 2017; a third Amended

---

[1] 11 *Del. C.* § 1503(a).
[2] 11 Del. C. § 1503(d).

2

Indictment was filed on September 19, 2017; and a corrected version of the third Amended Indictment was filed on September 21,2017. Mr. Kellam went to trial on the third Amended Indictment.

Each Amended Indictment was described as exactly that: an amended indictment. They were no re-indictments. There was no subsequent indictment presented to the Grand Jury. Only one True Bill was returned by the Grand Jury and that was the original indictment dated June 22, 2015.

Beginning with the first amended indictment, and for every subsequent indictment, including the indictment on which Petitioner proceeded to trial, the language in Count 1, Criminal Racketeering was modified. Instead of alleging five predicate events serving as the basis for "pattern of racketeering activity," these indictments alleged only three predicate events:

(1) the January 13, 2014 murders of Cletis Nelson and William Hopkins;

(2) the December 11, 2014 home invasion of Milton Lofland; and

(3) the December 14, 2014 home invasion of Azel Foster.

3

Additionally, the subsequent indictments eliminated the actual criminal charges which resulted from the two predicate events that were deleted: the events of May 18, 2014 and August 22, 2014.[3]

Prior to trial, on February 23, 2016, Trial Counsel filed a Motion to Suppress challenging the validity of a search warrant to intercept telephone communications. The State filed its Answer to the Motion to Suppress on March 18, 2016. Mr. Kellam filed his Response on March 31, 2016. Because of a recusal by the trial court judge, a visiting judge considered the Motion and denied it on July 6, 2016.

Prior to trial, and also on February 23, 2016, Trial Counsel filed a Motion to Sever the murder charges from the other charges. The State filed its Answer to the Motion to Sever on March 18, 2016. Mr. Kellam filed his Response on March 31, 2016. The Court held oral argument on November 23, 2016 and denied the Motion from the bench that same day.

At the close of Mr. Kellam's trial, the judge instructed the jury on the elements of all the charges. When instructing the jury on the elements of felony murder, the

---

[3] In the original indictment, those charges were listed as Counts 27-40 (pertaining to the home invasion of Isiah Phillips on May 18, 2014) and Counts 41-46 (pertaining to the home invasion of Ashley Moore on August 22, 2014).

jury was charged with the following statement of law: "in order to find the defendant guilty of murder in the first degree, you must find ... the person's death occurred in the course of or in furtherance of the defendant's commission of a felony."

A prayer conference was held prior to the administration of the jury instructions. The discussion shows that all parties were aware of and concerned with the distinctions between Mr. Kellam being charged as a principal tried for his own conduct and as an accomplice being held accountable for the conduct of his co-defendants. The parties and the trial court discussed the accomplice liability instructions of 11 *Del.* C. § 271, *et seq,* but none present, neither at the prayer conference nor in the time allotted for revision after, noticed the absence of a 11 *Del.* C. § 274 *Chance*[4] instruction on different degrees of the offenses.

As Mr. Kellam was charged on a theory of accomplice liability, the judge gave the jury an 11 *Del.* C. § 271 accomplice liability instruction. Because the State relied heavily on testimony of individuals who had taken plea deals in association with their involvement in the charged incidents, the judge also gave the jury an accomplice testimony instruction.

---

[4] *Chance v. State,* 685 A.2d 351 (Del. 1996).

The trial judge did not give the jury an 11 *Del.* C. § 274 *Chance* instruction on the individualized consideration of Kellam's culpability for his own mental state and his own accountability for aggravating factors. General *mens rea* requirements were brought up as the charges were listed, but unlike the specific accomplice testimony and accomplice liability instructions, there was no specific discussion of the § 274 additional requirements for offenses with different degrees and involving two or more persons. While § 274 incorporates § 271 by reference, the reverse is not true; thus, § 274 is not incorporated by reference.

On September 25, 2017, after a jury trial, Mr. Kellam was convicted of 38 criminal offenses, including one count of Racketeering, two counts of First Degree Murder, three counts of Home Invasion, two counts of First Degree Robbery, three counts of Second Degree Conspiracy, one count of First Degree Attempted Robbery, one count of Third Degree Assault, one count of Second Degree Assault, one count of Wearing a Disguise during the Commission of a Felony, and 23 counts of Possession of a Firearm During the Commission of a Felony. On March 23, 2018 he

was sentenced to two life sentences plus 769 years at Level 5.[5] On June 13, 2019, his conviction was upheld by the Delaware Supreme Court on direct appeal.

On August 28, 2019, Mr. Kellam filed a timely *pro se* Rule 61 Petition and Request for Appointment of Counsel. On October 15, 2021, Postconviction Counsel, having been appointed, filed an Amended Rule 61 Petition. The Petition asserted five claims: one claim of lack of jurisdiction (defective indictment); three claims of ineffective assistance of trial counsel ("Trial Counsel"); and one claim of cumulative error. Trial Counsel filed an affidavit (the "Trial Counsel Affidavit") on January 12, 2022. The State filed its Response on March 4, 2022. Mr. Kellam filed his Reply on October 31, 2022.

On October 31, 2922, Mr. Kellam also filed a motion to further amend the Petition, together with the proposed Amendment (the Amended Rule 61 Petition, as further amended, the "Petition"). He added new claims: that Trial Counsel was ineffective, both at trial and on direct appeal, for failing to object to (1) an erroneous felony murder jury instruction under *Ray v. State*,[6] and (2) the absence of a *Chance*[7]

---

[5] A chart is attached as Exhibit A hereto summarizing the Counts in the Indictment, the Offenses charged of which Mr. Kellam was convicted, the number of years of Level 5 incarceration given for each, and, where appropriate, additional comments.
[6] *Ray v. State*, 280 A.3d 627 (Del. 2022).
[7] *Chance v. State*, 685 A.2d 351 (Del. 1996).

instruction under 11 *Del. C.* § 274 with respect to felony murder. The Superior Court granted the motion on February 9, 2023 and accepted the additional claims. The State filed its Response on April 3, 2023. Mr. Kellam filed his Reply on May 17, 2023, in which he expanded his argument to include a claim that Trial Counsel also should have requested § 274 *Chance* instructions not just for the felony murder charge, but also for the robbery, assault, and home invasion charges. On September 26, 2023, the State filed a Corrected Response.

On September 25, 2023 I required Trial Counsel to submit a supplemental affidavit (the "Supplemental Trial Counsel Affidavit") addressing the claims in the Amended Rule 61 Petition, within sixty days. Trial Counsel filed his Supplemental Trial Counsel Affidavit on November 16, 2023. However, in the Supplemental Trial Counsel Affidavit, Trial Counsel did not address the expanded claims in Mr. Kellam's May 17, 2023 Reply with respect to the lack of § 274 *Chance* instructions not just for the felony murder charges, but also for the robbery, assault, and home invasion charges.

The Superior Court set June 22, 2023 as the date for oral argument in this case. However, in preparing for oral argument, it discovered a conflict of interest. Although on July 10, 2023 the parties filed a Waiver of Potential Conflict of Interest,

signed under oath by Petitioner, the Superior Court entered an Opinion on July 10, 2023, in which the Judge recused himself.

The case was reassigned to me. I held oral argument on Monday, September 25, 2023. At oral argument, I asked counsel to address the impact of vacating the two felony murder convictions, specifically which other convictions must also be vacated, and whether the Rule 61 Petition was ripe for adjudication. After oral argument, I asked counsel to file written post oral argument briefs. The State filed its Supplement After Oral Argument on January 22, 2024. Mr. Kellam filed Petitioner's Post Oral Argument Written Submission on February 29, 2024.

On March 7, 2024 I requested that Trial Counsel file a Second Supplemental Trial Counsel Affidavit. He did so on April 8, 2024. On April 10, 2024 I advised the parties that, although no additional briefing was necessary, either party could file additional material responding to the Second Supplemental Trial Counsel Affidavit by May 10, 2024. No party did so.

This is my decision on the Petition.

**Ripeness**

I asked counsel at oral argument to address whether the Rule 61 Petition is ripe for adjudication at this time if the two felony murder convictions and the related PFDCF convictions are vacated, given the Level V time remaining to be served on

9

the remaining unrelated convictions. Mr. Kellam was sentenced to a total of 769 years at Level V plus two life sentences. If the two life sentences are vacated, 150 years of Level V time for the related PFDCF convictions would also be vacated. However, this still leaves a total of 619 years at level V to be served on the unrelated convictions. It is unlikely that Mr. Kellam will ever serve out those sentences. Mr. Kellam argues that his Rule 61 Petition is ripe for adjudication given that the remaining unrelated convictions are subject to pardon or parole, making it uncertain whether he will serve out those sentences. The State argues that this is a highly unlikely scenario, and thus the Rule 61 Petition does not present an "actual controversy" and is not ripe for adjudication.

Our Supreme Court, in affirming the Superior Court's denial of a defendant's motion for correction of sentence, has held "that the issue [defendant] raises regarding his sentence on the weapon offenses does not appear to be ripe for consideration in light of [his] four life sentences without parole."[8] In a subsequent decision in that case, the Superior Court stated:

> As the Delaware Supreme Court already noted in a prior motion filed by Defendant seeking a correction of his sentence, Defendant's issues regarding his sentences on the weapons offenses does not appear to be ripe for consideration in light of the fact that he is serving life sentences without parole. Defendant must first serve his life sentences before he

---

[8] *Govan v. State*, 832 A. 2d 1251 (Table) (Del. 2003).

begins serving the sentences on the weapon convictions. Because Defendant is unlikely to ever serve those sentences, he does not appear to present an "actual controversy." Delaware courts are not required to expend judicial resources to answer questions that have no significant current impact.[9]

Two other 2010 cases are in accord. In a Superior Court case, defendant moved for postconviction relief after a jury convicted him, *inter alia*, of two counts of murder and he was sentenced to two life sentences plus additional time for other offenses. In denying the motion, the Court stated:

> Defendant's motion should be summarily dismissed because his issue regarding his life sentence on the Attempted First Degree Murder conviction is not ripe for consideration. Defendant must first serve his life sentence for First Degree Murder, without probation or parole or any other reduction, before he will begin to serve his life sentence on the Attempted First Degree Murder conviction. Defendant does not challenge his life sentence, without probation or parole, on his First Degree Murder conviction. In addition, Defendant must serve an additional 86 years on the Second Degree Murder, conspiracy and weapons convictions. Because Defendant must first serve his life sentence without probation, parole or any other reduction for his First Degree Murder conviction, it is unlikely he will ever serve any of the other remaining sentences. Thus, Defendant does not appear to present an "actual controversy" at the present time. Delaware courts are not required to expend judicial resources to answer questions that have no significant current impact.[10]

In a Supreme Court case affirming a decision of the Superior Court denying defendant's motion for correction of illegal sentence, the Court stated:

---

[9] *Govan v. State*, 2010 WL 3707416, at *1 (Del. Super. Aug. 31 2010) (Comm's Order).
[10] *State v. Twyman*, 2010 WL 4261921 (Del. Super. Oct. 19, 2010).

Equally meritless is Marvel's second claim that the start date on his life sentence is erroneous. Marvel must serve the remainder of his life in prison. There is no indication that the start date of his sentence, erroneous or not, has any "significant current impact" on him or presents any "actual controversy" ripe for consideration by this Court.

Finally, in a recent Superior court case, a jury found defendant guilty of several rape and other sexual offenses. He was sentenced to seven life sentences. The Superior Court denied his second motion for postconviction relief, stating:

> Defendant cannot demonstrate prejudice under *Strickland* – a reasonable probability of a different result at trial - from counsel's failure to object to the State's omission of the tolling provision in the Indictment. Even if counsel successfully objected to those counts, the same objection would not have applied to Counts V-XXI, and the Defendant was sentenced to seven life sentences without the possibility of release for the Rape First Degree convictions, plus more than eighty years of incarceration on the remaining convictions. Because Defendant is unlikely to serve out the seven life sentences, his claim does not present an "actual controversy."[11]

If I vacate the two felony murder convictions and the related PFDCF convictions, Mr. Kellam is unlikely to serve out the amount of Level V time remaining on the unrelated convictions. At first blush, therefore, it would appear that his Rule 61 claims as to the felony murder convictions and the related gun charges are not ripe for adjudication. However, unlike the two felony murder convictions, which require imprisonment for the remainder of a person's natural life "without

---

[11] *State v. Hearne*, 2023 WL 2980324 (Del. Super. April 17, 2023).

benefit of probation or parole or any other reduction,"[12] Mr. Kellam has the benefit of probation, parole, or reduction with respect to the remaining unrelated convictions. In my view, the key factor in analyzing ripeness is whether the remaining convictions have the "benefit of probation or parole or any other reduction." If they do, then the case is ripe for adjudication. If they do not, then the case is not ripe for adjudication. Since in this case the remaining unrelated convictions have the benefit of probation or parole, Mr. Kellam's Rule 61 claims as to the felony murder convictions are ripe for adjudication and I will consider them, below.

**The Grounds for Postconviction Relief**

In his Amended Rule 61 Petition, Mr. Kellam states five grounds for relief:

(1) The trial court lacked jurisdiction because subsequent indictments made material constructive changes to the charging document without presenting a re-indictment to the grand jury and without a valid waiver;

(2) Trial Counsel was ineffective because of his failure to move for severance of the murder charges from the other charges[13] for the second time after changes to the indictment, and appellate counsel was ineffective for failing to raise the

---

[12] 11 *Del. C.* § 4209(a)
[13] Trial Counsel's first motion to that effect was denied by the trial judge.

severance issue on direct appeal;

(3) Trial Counsel was ineffective because of his failure to move for recusal of the trial judge with respect to the motion to sever, based on the trial judge's prior approval of a wiretap;

(4) Trial Counsel was ineffective because of his failure to introduce cellular data evidence to impeach the testimony of a key State witness; and,

(5) Cumulative Error.

In his further Amended Rule 61 Petition, Mr. Kellam states one additional ground:

(6) Trial Counsel was ineffective because of his failure to object to (a) erroneous jury instructions regarding felony murder under *Ray*, and (b) the absence of a *Chance* instruction on different degrees of felony murder under 11 *Del. C.* § 274.

In his May 17, 2023 Reply, Mr. Kellam expanded ground (6) to include the absence of a *Chance* instruction under 11 *Del. C.* § 274 with respect to assault, robbery, and home invasion.

**Trial Counsel Affidavit, Supplemental Trial Counsel Affidavit, and Second Supplemental Trial Counsel Affidavit**

In his Trial Counsel Affidavit, Trial Counsel addressed the jurisdiction claim and the ineffective assistance of counsel claims.

With respect to the argument that the trial court lacked jurisdiction because the indictment upon which Mr. Kellam was tried was different than that indicted by the grand jury, Trial Counsel explains how that resulted from certain groups of charges being *nolle prossed* prior to trial. The indictment began with five incidents and the trial was on only three of those incidents, including the murder. Trial Counsel believes that this jurisdictional claim impliedly alleges that he was ineffective for failing to move to dismiss the allegedly deficient indictment. Trial Counsel points out that a pattern of racketeering activity is defined by statute as two or more incidents constituting racketeering activity. As the State whittled down its case prior to trial by jettisoning two of the five alleged incidents, Trial Counsel considered whether the case still qualified as a racketeering case. He concluded that it did still qualify, because three incidents remained in which the grand jury found probable cause and indicted. Therefore, he concluded the Racketeering counts were still valid and did not move to dismiss them.

With respect to the severance claim, Trial Counsel made a motion at trial to sever the murder counts from the other incidents in the indictment, because he thought grouping five incidents together, including a double homicide, was patently unfair and made it impossible for Mr. Kellam to get a fair trial, because jurors would find it extremely difficult to compartmentalize the evidence

15

separately as to each incident. The Court denied this motion. He did not believe that he had a good faith basis to relitigate the motion after two of the five groups of charges were *nolle prossed.* The essential problem with the motion to sever was the Racketeering charges. Since the grand jury approved Racketeering charges, the State had the ability to argue that all the charges needed to be tried together so that it could prove there was an enterprise committing racketeering activity. That argument would have prevailed even if he had relitigated the severance motion. With respect to not raising the severance issue on appeal, as an experienced appellate lawyer Trial Counsel did not think the severance issue had any chance of success, for the reasons stated above. Essentially, the racketeering counts trump the "normal" concerns associated with severance.

With respect to the recusal claim, Trial Counsel saw no reason to move to recuse the trial judge because he had approved the wiretap warrants. The trial judge recused himself from considering motions to suppress the wiretaps he himself had approved. However, as discussed above, the severance motion presented a different set of legal issues, and reflected the State's arguments without any comment on the contents of the wiretap petition. The court's decision on severance essentially was that, since this was a racketeering case alleging a pattern of criminal activity, severance was not appropriate. Since Trial

Counsel believed the trial judge made that decision based only on consideration of the severance motion, the State's response, and the oral argument, he saw no basis to move to recuse the trial judge. In any event, Trial Counsel's motion to sever was not to sever the case into five separate trials, but to sever the double Murder First Degree incident from the rest of the incidents to ensure a fair trial. He conceded that the racketeering statute defeats severance of all incidents. Because that was the issue presented, Trial Counsel had no reason to think the trial judge should have been recused.

With respect to Trial Counsel's failure to introduce a witness's cellphone records to impeach his testimony, Trial Counsel states that he made a strategic decision not to do so for three reasons. First, he already had much impeachment evidence with which to work, including conflicting testimony from all the witnesses. In his view, the witnesses lied to the police, testified in exchange for a benefit, and incriminated Mr. Kellam to protect their own interests. Second, the courtroom dynamics reflected that the interest and engagement of the jury over the course of a three-week trial were flagging. The introduction of cellphone records and confrontation of them would prolong the witness' cross-examination without much benefit. Third, Trial Counsel thought the cellphone evidence hurt more than it

helped. All the witnesses were using each other's cellphones, and who was using which phone at what time was very murky. Moreover, the State could have rebutted this cellphone issue on redirect examination by refreshing the witness' recollection with his prior statements.

In his Supplemental Trial Counsel Affidavit, Trial Counsel simply states that he failed to notice and object to the outdated language in the felony murder jury instruction.

With respect to the lack of a § 274 *Chance* instruction, Trial Counsel only addresses the lack of a § 274 *Chance* for the felony murder charges. He states that he intentionally did not request a § 274 instruction for three reasons. First, this was an "all or nothing" case. If the jury found Mr. Kellam was the "general" in charge of the "soldiers," as the State argued, he would be found guilty of felony murder, home invasion, assault, and robbery. Trial Counsel did not, and still does not, think the evidence proved that Mr. Kellam was in charge. His strategy was to point out the glaring inconsistencies in the accomplices' testimony. They could not even agree on how and when Mr. Kellam supposedly gave the "kill order" for the murders. Trial Counsel also argued that every key witness in the case was getting a deal from the State in exchange for his or her testimony. Therefore, his strategy was to obtain not guilty verdicts. Neither he nor Mr. Kellam wanted

compromise, lesser-included offense verdicts. Moreover, with respect to the murders, Trial Counsel did not view Murder Second Degree verdicts as a win for Mr. Kellam. With all the additional charges, such verdicts would have put Mr. Kellam in prison for life anyway.

Second, Trial Counsel did not believe there was any factual basis to request a § 274 *Chance* instruction. The only lesser-included offense of felony first degree murder is felony second degree murder. That offense requires the State to prove the killings were conducted with a negligent mental state. There was no basis in the evidence to argue that. These were brutal murders. The trial judge would not have given a lesser-included instruction if there was no factual basis in the record for it.

Third, Trial Counsel strongly believed that any resort to lesser-included offenses would have undermined his credibility with the jury. The jurors had watched him impeach witnesses with prior inconsistent statements and otherwise attempt to demonstrate that the State did not prove that Mr. Kellam was the mastermind. It therefore made no sense for Trial Counsel to stand before the jury and argue that if they thought the State was correct to consider negligent felony murder or lesser offenses of the other crimes.

In his Second Supplemental Trial Counsel Affidavit, Trial Counsel addresses Mr. Kellam's expanded argument that a § 274 *Chance* jury instruction should have

been given, not just for the felony murder charges, but also for the robbery, assault, and home invasion charges. Trial Counsel reiterates that he did not request a §274 instruction and the associated lesser included offenses on the non-felony murder charges for the same three reasons stated in his first Supplemental Affidavit. First, the trial strategy was "all-or-nothing." Mr. Kellam was charged with so many serious offenses that convictions for lesser-included offenses would likely have imprisoned Mr. Kellam for the rest of his life. Second, there was no factual basis in the evidence to request a § 274 instruction and the attendant lesser-included offenses. Third, Trial Counsel did not want to compromise his credibility with the jury. The strategy was to convince the jury that there was reasonable doubt that Mr. Kellam was a "general" in charge of his "soldiers." Trial Counsel did not want to have to address lesser offenses as an alternative.

The Home Invasions were not dividable into degrees because they were based on predicate crimes of Robbery and Assault, where mental state is not a factor. As to the aggravating factor of a firearm, it is unreasonable to think that Mr. Kellam was an accomplice but was not responsible for the firearms used. It makes no sense based on the facts of the three home invasions and the accompanying crimes. Either the jury was going to believe Mr. Kellam was the mastermind controlling the others or they were not. Lesser included offenses made no sense in this trial.

20

Moreover, even if § 274 and lesser included instructions carried the day on one or even two of the home invasions, and if Mr. Kellam was convicted of lesser included offenses on the homicides, he still faced decades in prison if convicted. There is no scenario in which the jury would have found Mr. Kellam not guilty of some form of homicide and guilty of only lesser included offenses of the other crimes. The positions of the state and defense were too diametrically opposed. The jury would either adopt the State's theory or not. Based on the evidence, Trial Counsel states that he had no factual basis to request lesser included offenses even if he thought it was a good idea, which he did not.

Trial Counsel states that there was ample room for reasonable doubt in Mr. Kellam's case. Every major witness testified in exchange for a deal, and every major witness had lied to the police, usually multiple times. The strategy adopted by Mr. Kellam was to impeach those witnesses and argue to the jury that the "general soldier" relationship was unsupported by the evidence. Even if there was some slight factual basis for lesser included offenses, Trial Counsel would not have requested those instructions.

Finally, Trial Counsel addresses Postconviction Counsel's statement that Trial Counsel wrote a letter to Mr. Kellam stating that, "subject to change," Trial Counsel planned to appeal the lack of an *Allen* instruction. Although Trial

Counsel did consider it, he decided against it, mainly for the reasons stated in his two Affidavits. Moreover, he knew that the claim would have been subject to "plain error" review, the most onerous standard. Ultimately, Trial Counsel decided that it would make a more appropriate postconviction claim under Rule 61.

**Procedural Bars**

I first address the four procedural bars of Rule 61.[14] If a procedural bar exists, as a general rule I will not address the merits of the postconviction claim.[15] A Rule 61 Motion can be barred for time limitations, successive motions, failure to raise claims below, or former adjudication.[16]

First, a motion for postconviction relief exceeds time limitations if it is filed more than one year after the conviction becomes final.[17] In this case, Mr. Kellam's conviction became final for purposes of Rule 61 when the Delaware Supreme Court issued a mandate or order finally determining the case on direct review; i.e., June 13, 2019.[18] Mr. Kellam filed the *Pro Se* Petition on August 28, 2019, well within

---

[14] *Ayers v. State*, 802 A.2d 278, 281 (Del.2002) (citing *Younger v. State,* 580 A.2d 552, 554 (Del. 1990)).
[15] *Bradley v. State*, 135 A.3d 748 (Del. 2016); *State v. Page*, 2009 WL 1141738, at*13 (Del. Super. April 28, 2009), *aff'd* 994 A.2d 745 (Del. 2010).
[16] Super. Ct. Crim. R. 61(i).
[17] Super. Ct. Crim. R. 61(i)(1).
[18] Super. Ct. Crim. R. 61(m)(2).

the one-year period. Consequently, the Amended Petition filed by Postconviction Counsel on October 15, 2021 and the further Amended Petition filed by Postconviction Counsel on October 31, 2022 are also timely, even though they were filed more than a year after Mr. Kellam's convictions became final. "Rule 61's time limit applies only to the initial filing, and ... Rule 61 grants Superior Court judges discretion to permit defendants to amend their motions when justice so requires."[19] Therefore, consideration of the Motion is not barred by the one-year limitation.

Second, second or subsequent motions for postconviction relief are not permitted unless certain conditions are satisfied.[20] Since this is Mr. Kellam's first petition for postconviction relief, consideration of the Motion is not barred by this provision.

Third, grounds for relief "not asserted in the proceedings leading to the judgment of conviction"[21] or on direct appeal are procedurally barred. This procedural bar also applies "even when ineffective assistance of counsel is asserted, unless the defendant successfully demonstrates that counsel was in fact ineffective

---

[19] *Ploof v. State*, 75 A.3d 811, 821 (Del. 2013), as corrected (Aug. 15, 2013) (citations omitted).
[20] Super. Ct. Crim. R. 61(i)(2).
[21] Super. Ct. Crim. R. 61(i)(3).

and that ineffectiveness prejudiced his rights."[22]  It is well-settled Delaware law

that, as collateral claims, ineffective assistance of counsel claims are properly raised

for the first time in postconviction proceedings.[23]  Most of Mr. Kellam's claims are

grounded in ineffective assistance of counsel. Thus, those claims are not barred by

this provision.

The State argues that Mr. Kellam failed to raise his claim about the indictments

and their effect on jurisdiction claim prior to or during trial, or on direct appeal, and

it is therefore procedurally  barred.  To establish cause sufficient to overcome the

procedural default bar of Rule  61(i)(3)(A),  Kellam  must  show  that  an  external

impediment  prevented  him from raising the claim  either at trial or on direct appeal.[24]

In  order  to meet the second prong of Rule  6l(i)(3)(B), Kellam must demonstrate actual

prejudice resulting from the alleged and previously unasserted error.[25]  Kellam has alleged

neither a cause for his default, nor prejudice therefrom. Although I understand the State's

argument under Rule  61(i)(3), the jurisdictional issue is fundamental under the exceptions

---

[22] *Wils on v. State*, 900 A.2d 102 (Table), 2006 WL 1291369, at *2 (Del. May 9, 2006) (citing *Gattis v. State*, 697 A.2d 1174 (Del. 1997)).
[23] *State v. Schofield*, 2019 WL 103862, at *2 (Del. Super. January 3, 2019); *Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5745708, at *2 (Del. Oct. 21, 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").
[24] *Outten v. State,* 720 A.2d 547, 556 (Del. 1998); *Younger v. State,* 580 A.2d at 554.
[25] *Younger,* 580 A.2d at 555-56.

of Rule 61(i)(5) and I will consider it both procedurally and on the merits, below.

Fourth, grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal *habeas corpus* hearing" are barred.[26] One could argue that the severance motion claim was previously adjudicated when the Court denied Trial Counsel's motion to sever. However, since Mr. Kellam argues that Trial Counsel should have made a second motion to sever, and since that claim sounds in ineffective assistance of counsel, I will consider it on the merits, below.

Finally, none of the four procedural bars apply either to a claim that the Court lacked jurisdiction or to a claim that pleads with particularity that new evidence exists that creates a strong inference of actual innocence,[27] or that a new retroactively applied rule of constitutional law renders the conviction invalid.[28] Mr. Kellam attempts to overcome the Rule 61(i)(3) procedural bar (see discussion, above) by claiming the amendments to the indictment deprived the Court of jurisdiction, triggering the exception of Rule 61(i)(5). The State argues that this claim fails because an indictment defect, such as is alleged here, does not deprive a court of

---

[26] Super. Ct. Crim. R. 61(i)(4).
[27] Super. Ct. Crim. R. 61(i)(5).
[28] Super. Ct. Crim. R. 61(d)(2)(i) and (ii).

jurisdiction.[29] Although I understand the State's argument, I am going to consider the indictment/jurisdiction claim on the merits, below.

**Legal Standard**

Mr. Kellam brings one claim of lack of jurisdiction, four claims of ineffective assistance of counsel, and a sixth claim of the cumulative effect of those errors. The four ineffective assistance of counsel claims are assessed under the two-part standard established in *Strickland v. Washington,*[30] as applied in Delaware.[31] Under *Strickland*, Mr. Kellam must show that (1) Trial Counsel's representation "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the "deficient performance prejudiced [his] defense" (the "prejudice prong").[32] In considering the performance prong, the United States Supreme Court was mindful that "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[33] *Strickland* requires an objective analysis, making every effort "to eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within

---

[29] *See United States v. Cotton,* 535 U.S. 625, 631 (2002) (holding a defective indictment does not deprive a court of jurisdiction); *Grimes v. State,* 2020 WL 4200132, at *3 (Del. July 21, 2020) (finding the Superior Court was not divested of jurisdiction by amended indictment).
[30] 466 U.S. 668 (1984).
[31] *Albury v. State*, 551 A.2d 53 (Del. 1988).
[32] *Strickland*, 466 U.S. at 687.
[33] *Id*. at 690.

the wide range of reasonable professional assistance."[34] "[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based."[35]

As to the performance prong, Mr. Kellam must demonstrate that Trial Counsel's failure to (1) move to sever at trial and to raise the severance issue on direct appeal, (2) move for recusal of the trial Judge, (3) introduce certain cellular data evidence, and (4) object to an erroneous felony murder jury instruction, all as discussed more fully below, were unreasonable decisions.

As to the prejudice prong, Mr. Kellam must demonstrate that there exists a reasonable probability that, but for Trial Counsel's errors, the outcome of the trial would have been different.[36] Even if Trial Counsel's performance was professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[37] A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[38]

---

[34] *Id.* at 689.
[35] *Id.* at 681.
[36] *Albury,* at 687; *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[37] *Strickland,* at 691.
[38] *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir. 1992).

*Strickland* teaches that there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in a particular order, or even to address both prongs of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant because of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[39] In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.[40]

The Constitution does not require that the performance of Trial and Appellate Counsel be error free to satisfy the effectiveness standard.[41] The performance inquiry turns on whether counsel's assistance was reasonable under all the circumstances.[42] Evidence of isolated poor strategy, inexperience, or bad tactics does not necessarily establish ineffective assistance.[43]

---

[39] *Strickland,* at 697.
[40] *Id*. at 696.
[41] *McMann v. Richardson,* 397 U.S. 759, 770-71 (1970).
[42] *Wong v. Belmontes,* 558 U.S. 15, 17 (2009); *Strickland,* 466 U.S. at 688.
[43] *Bellmore v. State,* 602 N.E. 2d 111, 123 (Ind. 1992) rehearing den. 1993.

Effective appellate counsel is expected to confine the appeal to presenting those claims, which in his professional judgment, appear to be the strongest.[44] "A defendant can only show that his appellate counsel ineffectively represented him where the attorney omits issues that are clearly stronger than those the attorney presented."[45] To determine prejudice, the court analyzes the issue on the merits.[46]

**Analysis**

**The Indictments and Jurisdiction**

The grand jury clause of the United States Constitution[47] (the "Grand Jury Clause") and the Delaware Constitution[48] guarantee Mr. Kellam the right to have his case presented to a Grand Jury before the State may proceed to trial against him. The notice clause of the United States Constitution[49] (the "Notice Clause")

---

[44] *Davila v. Davis,* 580 U.S. 1158 (2017) ("Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." (Citing *Smith v. Murray,* 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745, 751-753 (1983))).

[45] *Ploof,* 75 A.3d at 832. *See Davila* ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court.").

[46] *Id.*

[47] *See* U.S. Const., amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.").

[48] Del. Const. art. I, § 8.

[49] *See* U.S. Const., amend. VI ("[T]he accused shall enjoy the right … to be informed of the nature and cause of the accusation …").

and the Delaware Constitution[50] guarantee Mr. Kellam's right to be on notice of the charges against him.

With respect to Federal law, the Grand Jury Clause prohibits constructive amendments and prejudicial variances to an indictment. A violation of the Grand Jury Clause can occur when the indictment is amended by the State, the Court, or constructively in such a way that there is a substantial likelihood that the trial jury may have convicted the defendant for an offense that is different from that alleged in the grand jury indictment.[51] "Constructive amendments and variances are related issues that stem from the Fifth Amendment's requirement that 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'"[52] "A constructive amendment results when the terms of an indictment being, in effect, altered by the

---

[50] Del. Const. art. I , § 7.

[51] *See United States* v. *Miller,* 471 U.S. 130, 142-45 (1985) (reaffirming the idea that an indictment is unconstitutionally amended when it is so altered as to charge a different offense from that found by the grand jury); *United States v. Daraio,* 445 F.3d 253, 259-60 (3d Cir. 2006) (noting that a constructive amendment, which federal courts have found violates the Fifth Amendment, occurs "when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged" (footnote omitted) (citing *Miller,* 471 U.S. at 140)).

[52] *United States v. Rios,* 830 F.3d 403,427 (Ct. App. 6th Cir. July 21, 2016) reh. den. Sept. 27, 2016.

presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment."[53] "A variance occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment."[54]

"There are two types of constructive amendment: first, when there is a complex of facts presented at trial different from those set forth in the charging instrument, and second, where the crime charged in the indictment was substantially altered at trial so that it was impossible to know whether the Grand Jury would have indicted for the crime actually proved."[55]

With respect to Delaware law, this Court has stated:

> Article I section 8 of the Constitution of the State of Delaware prohibits the State from initiating criminal proceedings by information when a person is arrested for an indictable offense. The Delaware Constitution thus protects citizens from unfounded State prosecutions by requiring the State to prove to a jury of the defendant's peers, a Grand Jury, that the charges are justified.
>
> At its common law roots, an indictment could only be amended by the Grand Jury that had returned the True Bill. However, common

---

[53] *Id.*
[54] *Id.*; *Stirone v. United States,* 361 U.S. 212 (1960).
[55] *United States v. Davis,* 854 F.3d 601 (Ct. App. 9th Cir. Apr. 14, 2017).

law evolved to allow judicial amendments so long as those amendments did not affect the substance of the indictment. Thus, Superior Court Criminal Rule 7(e) states the court may permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.[56]

Mr. Kellam argues that, since his rights under both the Grand Jury Clause and the Notice Clause under both Federal and Delaware law were violated, the trial court lacked jurisdiction, and Mr. Kellam is entitled to a new trial.[57] Mr. Kellam argues that he was tried on an indictment that was different than the one presented to the Grand Jury. Trial proceeded without a waiver by Mr. Kellam of subsequent indictments. Subsequent indictments in the case, which were never presented to a Grand Jury, made material, constructive, structural changes to the charging document and Mr. Kellam's substantial constitutional rights were prejudiced.

The State counters that the changes to the Racketeering charge in the Corrected Amended Indictment amount to neither an unconstitutional constructive amendment or prejudicial variance under Federal law or an improper substantive amendment under Delaware law. It also argues that

---

[56] *Ligon v. State,* 170 A.3d 147 (Del. 2017) (TABLE).
[57] Mr. Kellam appears to be claiming constitutional violations with respect to both Counts 1 and 2 of the original indictment, Criminal Racketeering and Conspiracy to Commit Racketeering, but the State entered a *nolle prosequi* for the conspiracy count prior to trial. Thus, I will only address the claim about the racketeering conviction.

Kellam's claims are procedurally barred under Rule 61 (see discussion, above) and are, in any case, meritless.

The Racketeering charge required the State to prove that Mr. Kellam participated in the affairs of an enterprise through a "pattern of racketeering activity." A "pattern of racketeering activity" is defined as two or more incidents of conduct that constitute racketeering activity, are related to the affairs of the enterprise, and are not so closely related to each other and connected in time that government must prove that the predicates acts are related and pose a threat of continued criminal activity.[58] This same approach to Racketeering charges is reflected on the Federal level.[59]

As discussed above, in the only indictment ever presented to the Grand Jury, the "pattern of racketeering activity" was alleged to be comprised of two or more of five predicate events outlined in five enumerated sub-paragraphs. By the time the case proceeded to trial, the five predicate events had been reduced to three predicate events.

Mr. Kellam argues that he was convicted of Racketeering based upon some combination of only three of the five predicate events submitted to the Grand Jury,

---

[58] *Lloyd* v. *State,* 249 A.3d 768 (Del. 2021).
[59] See *United States* v. *Brandao,* 539 F.3d 44, 54 (Ct. App. 1st Cir. 2008).

but it is impossible to tell if the Grand Jury would have returned a True Bill if the original indictment only identified three, instead of five, predicate events. Because there is no way of knowing which of the five predicate events the Grand Jury found to exist, and because there is no way of knowing how many of the five predicate events the Grand Jury found to exist, it follows *a fortiori* that there is no way of knowing if Mr. Kellam was convicted of the same Racketeering charge for which he was indicted. Indeed, Mr. Kellam argues that it is substantially likely that he was convicted of a crime for which he was not indicted. Mr. Kellam stresses that he was not tried for any of the underlying charges that served as the basis for the predicate offenses that were later removed.

However, the United States Supreme Court has never applied the Grand Jury Clause to the States.[60] Thus, to the extent Mr. Kellam is arguing the changes to the Racketeering charge violated the Grand Jury Clause, his claim is not cognizable. "[T]he legality of an amendment to an indictment is primarily a matter of state

---

[60] *See Johnson v. State,* 711 A.2d 18, 23 (Del. 1998) ("The United States Supreme Court has never held ... that the Fifth Amendment concepts of a 'grand jury' are applicable to the states by virtue of the Fourteenth Amendment incorporation doctrine." (citing *Hurtado v. California,* 110 U.S. 516, 538 (1884); *Alexander v. La,* 405 U.S. 625, 635 (1972) (Douglas, J. concurring))); *accord Dixon v. May,* 2021 WL 1226438, at *6 (D. Del. Mar. 31, 2021).

law."[61]

Even if the Grand Jury Clause did apply in Delaware, the removal from the Racketeering charge in the Corrected Amended Indictment of two of the five predicate events was not an unconstitutional amendment. The United States Supreme Court has held that "where an indictment charges ... the commission of one offense in several ways, the withdrawal from the jury's consideration of ... one alleged method of committing it does not constitute a forbidden amendment of the indictment."[62] In keeping with that holding, Federal courts have consistently found that changes after indictment to Racketeering and other conspiracy charges that remove predicate events or overt acts, or that otherwise narrow the conspiracy, do not violate the Fifth Amendment.[63]

---

[61] *United States ex. rel Wojtycha v. Hopkins,* 517 F.2d 420, 425 (3d Cir. 1975), *quoted in Dixon,* 2021 WL 1226438, at *6; *accord Dixon v. State,* 2015 WL 2165387, at *2 (May 7, 2015); *Mott v. State,* 9 A.3d 464,465 (Del. 2010); *Johnson,* 711 A.2d at 23.

[62] *Miller,* 471 U.S. at 145 (citing *Salinger v. United States,* 272 U.S. 542, 548-49 (1926)). *See also id.* at 140 (finding no Fifth Amendment violation when "[defendant's] complaint [wa]s not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary"). *Cf Turner v. United States,* 396 U.S. 398, 420 (1970) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").

[63] *See, e.g., United States v. Hornick,* 491 F. Appx 277, 286-87 (3d Cir. 2012) (finding court's narrowing of conspiracy's time frame in jury instructions did not constructively amend indictment); *United States v. Weinstock,* 1998 WL 344047, at *6 (6th Cir. May 27, 1998) ("(I)f the evidence offered at trial proves a narrower scheme than the one alleged in the indictment, then the variance is not fatal." (internal quotations and citations omitted)); *United States v. Zauber,* 857 F.2d 137, 150-51 (3d Cir. 1988) (finding no unconstitutional amendment to reduced-count indictment because the remaining counts sufficiently alleged a racketeering conspiracy); *United*

The United States Supreme Court has held that the Notice Clause applies to the States through the Fourteenth Amendment.[64] An amended indictment would violate the Sixth Amendment if it did not contain all the elements of the charged offense or fairly inform the defendant of the charge against which he must defend.[65]

To the extent Mr. Kellam is claiming the amendment to the racketeering charge violated his right to fair notice,[66] this claim is unavailing. The amended indictment contained all the necessary elements of Racketeering and fairly informed Mr. Kellam of the charge.

A Racketeering conviction requires proof of three elements: "( 1) that the defendant was associated with an enterprise; (2) that the defendant conducted

---

*States v. Ledbetter,* 2015 WL 5117979, at \*6 (S.D. Ohio Sept. 1, 2015) (noting predicate acts of racketeering are surplusage, not essential elements of the charged conspiracy, thus, changes to them do not support constructive amendment or variance claims). *Cf United States v. Rios,* 830 F.3d 403, 427 (6th Cir. 2016) (noting that the overt act element of a racketeering conspiracy charge may be satisfied by an overt act not specified in the indictment without violating the Fifth Amendment's prohibition on constructive amendments); *United States v. Pumphrey,* 831 F.2d 307, 309 (U.S. App. D.C. 1987) ("[E]xcess allegations in an indictment that do not change the basic nature of the offense charged need not be proven and should be treated as mere surplusage.").

[64] *Dixon,* 2021 WL 1226438, at \*6 (noting that the Sixth Amendment fair notice requirement applies to the States through the Fourteenth Amendment (citing *In re Oliver,* 333 U.S. 257 (1948)); *accord Crawford v. Pennsylvania,* 714 F. Appx 177, 179 (3d Cir. 2017).

[65] *See Crawford,* 714 F. Appx at 179 (noting that to meet the Sixth Amendment's fair notice requirement, an indictment must contain the elements of the offense charged and provide the defendant with notice of the charges against which he must defend).

[66] *Cf Daraio,* 445 F.3d at 261 ("[T]he concerns raised by a variance argument are the fairness of the trial and the protection of the defendant's right to notice of the charges against her and her opportunity to be heard.").

the enterprise through a pattern of racketeering activity ... ; and (3) that the defendant's conduct or participation in the pattern of racketeering was intentional."[67] The Delaware Criminal Code defines a "pattern of racketeering activity" as "two or more incidents of conduct" that "constitute racketeering activity," that "are related to the affairs of the enterprise," and that do not constitute a single event (the "predicate-events").[68] "Racketeering activity" includes, *inter alia,* any activity constituting a felony under the Delaware Code.[69]

To prove Racketeering, in addition to intent, the State must prove two necessary elements: the existence of an enterprise and the presence of a pattern of racketeering beyond a reasonable doubt.[70] Here, the indictment approved by the grand jury alleged that Kellam "while being . . . associated with an unnamed organization, an enterprise as defined by Title11 § 1502(3), did knowingly conduct or participate in the conduct of the affairs of the enterprise, through a pattern of racketeering activity," which "consisted of two or more" of five incidents of conduct (the predicate events). The Corrected Amended Indictment submitted to the jury at trial contained the same language, but only listed three predicate events.

---

[67] *White v. State,* 243 A.3d 381,398 (Del. 2020) (citing 11 *Del. C.* § 1503).
[68] 11 *Del. C.* § 1502(5)a.
[69] 11 *Del. C.* § 1502(9)b
[70] *Stroik v. State,* 671 A.2d 1335, 1340 (Del. 1996).

The fact that the version of the indictment submitted to the jury contained fewer predicate offenses does not amount to a Sixth Amendment violation. The original indictment and the amended indictments each alleged all the necessary elements. And, even though the State dropped two of the predicate events from the indictment submitted to the jury, both indictments clearly put Mr. Kellam on notice that he was going to have to defend himself against the Racketeering charge, which always included as predicate events the charges of which he was convicted.[71] A defendant cannot show his substantial rights were prejudiced by the absence of charges alleged against him in an original indictment.[72] Moreover, "[t]he listing of multiple means of committing a statutory offense is a recognized and accepted practice."[73] Accordingly, Mr. Kellam cannot show that the removal of two of the

_____

[71] *See United States v. Schoenhut,* 576 F.2d 1010, 1021-22 (3d Cir. 1978) ("A variance does not prejudice a defendant's substantial rights ... if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial." *quoted in Daraio,* 445 F.3d at 262).

[72] *See Miller,* 471 U.S. at 134-35 (finding no notice-related violation concerns from government's removal of part of indictment that alleged prior knowledge of burglary, noting "there can be no showing here that Miller was prejudicially surprised at trial by the absence of proof concerning his alleged complicity in the burglary"); *Zauber,* 857 A.2d at 151 (finding no Sixth Amendment violation when RICO case was tried on a 90-count indictment, which, by the time of trial had been reduced to six counts).

[73] *Richardson v. State,* 673 A.2d 144, 146 (Del. 1996) (citing *Griffin v. United States,* 502 U.S. 46, 51 (1991)). *Cf United States v. Conley,* 92 F.3d 157, 163 (3d Cir. 1996) ("It is clear that when a jury returns a general verdict of guilty on a multi- object conspiracy count, the conviction will stand over Fifth Amendment due process objections so long as there is sufficient evidence to support any one of the objects of the conspiracy." citing *Griffin,* 502 U.S. at 56-57)).

listed predicate events from the racketeering charge violated the Sixth Amendment.

Finally, the amended indictments do not violate Delaware law. Superior Court Criminal Rule 7(e) permits amendment of an indictment "at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." The purpose of the rule is to give a defendant: (1) notice of the charges against him so that he can prepare an adequate defense; and (2) protection from double jeopardy.[74] "[T]he principal test for determining the appropriateness of an amendment under the Delaware Constitution [focuses] on the extent to which the amendment substantively changes the material elements of the crime alleged in the original indictment."[75] Thus, a judge may amend an indictment as to matters of form, but not as to matters of substance "as long as ' ... no new, additional or different charge is made thereby and the accused will not otherwise suffer prejudice as to substantial rights.'"[76] Additionally, it is generally accepted that a court may permit amendment of the indictment to charge a defendant with a lesser-included offense to an original charge.[77]

---

[74] *Tingle v. State,* 815 A.2d 349 (Del. 2003); *accord Keller v. State,* 425 A.2d 152, 155 (Del. 1981).

[75] *Coffield v. State,* 794 A.2d 588, 592 (Del. 2002).

[76] *Keller,* 425 A.2d at 155 (quoting *State v. Blendt,* 120 A.2d 321, 324 (Del. Super. 1956)).

[77] *See State v. Grossberg,* 1998 WL 278391, at *1 (Del. Super. Ct. Apr. 13, 1998) ("Because a

This Court did not err in permitting the State to amend the indictment to remove two of the five predicate events for Racketeering. The amendment did not change the material elements of the charge, especially given that Delaware law permits an indictment to list alternative means with respect to an element of a crime.[78] Moreover, as discussed above, the original indictment already placed Mr. Kellam on notice that he would have to defend against the three remaining predicate events, thus sufficiently enabling him to prepare a defense.[79] Mr. Kellam cannot show the amendment violated Delaware law.[80]

I deny this claim.

---

lesser included offense is, by definition, composed exclusively of some, but not all, of the elements of the offense charged, it would never constitute a 'different' offense, and seldom an 'additional' offense within the meaning of Rule 7(e)." (quoting *Virgin Islands v. Bedford,* 671 F.2d 758, 765 (3rd Cir. 1982))); *accord Rogers v. State,* 2003 WL 22957024, at *2 (Del. Dec. 12, 2003) (finding Superior Court properly exercised discretion in permitting State to amend indictment to charge defendant with lesser-included offense of original charge).

[78] *See Richardson,* 673 A.2d at 147 ("It was a historical practice and continues to remain a common practice to list in one count of an indictment alternative means with respect to an element of a crime.").

[79] *Cf Norwood v. State,* 813 A.2d 1141 (Del. 2003) ("If the original indictment, when viewed with the amendment, is sufficiently certain and understandable to enable the defendant to prepare his defense, the defendant will not be prejudiced.").

[80] *Cf. Metelus v. State,* 2018 WL 6523215, at *3 (Del. Dec. 10, 2018) (finding no abuse of discretion in allowing indictment to be amended when defendant did not argue that the amended indictment charged an additional or different offense or that her defense would have differed).

**Ineffective Assistance of Counsel**

**Severance**

Although Postconviction Counsel disclaims an attempt to relitigate the Motion to Sever made by Trial Counsel at trial, he incorporates the Motion to Sever, the Reply to Motion to Sever, and oral argument on the Motion to Sever by reference in his argument. Mr. Kellam asserts that Trial Counsel was ineffective for failure to move for severance a second time after the changes the to the indictment resulting in fewer charges going to the jury.

To establish prejudice based upon an attorney's failure to seek severance, Petitioner must show that a motion to sever would have been granted and that if the charges had been tried separately the result would have been different. Prejudice occurs if there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. A reasonable probability is probability enough to undermine the outcome.[81]

Under Superior Court Criminal Rule 8, a defendant may be indicted for two or more offenses if the offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions

---

[81] *State v. Woods,* 2008 Wash. App. (Wash. Ct. App. May 12, 2008).

connected together or constituting parts of a common scheme or plan.

"The United States Supreme Court held that, when addressing the Federal RICO statute, to prove a pattern of racketeering activity, the government must show that the predicate acts are related to the enterprise and they amount to or pose a threat of continued criminal activity."  "Relatedness exists if the racketeering acts 'have the same or similar purposes, results, participants, victims, or other methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"[82]

Under Superior Court Criminal Rule 14, the Superior Court may grant a motion for severance for separate trials if it appears that a defendant or the state is prejudiced by a joinder of offenses … in an indictment.[83]  Delaware Courts have identified prejudice arising from joinder where: (1) the jury may accumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find; (2) the jury may use the evidence of one of the crimes to infer a general criminal disposition of the defendant in order to find guilt of the other crime or crimes; and (3) the defendant may be subject to

---

[82]*Lloyd v. State,* 249 A.3d 768 (Del. 2021) (citing *H.J. Inc. v. Northwestern Bell Telephone Company,* 492 U.S. 229 (1989)).
[83] *Lloyd v. State,* 249 A.3d 768 (Del. 2021).  See also *Bates v. State,* 386 A.2d 1139 (Del. 1978).

embarrassment or confusion if there is any different and separate defenses to the different charges.[84]

Mr. Kellam argues that, although the trial court should have granted the motion to sever in the first instance, it would have granted the motion to sever after the indictment was changed so critically. At oral argument, Trial Counsel argued that the murder charges should be tried separately from the remaining charges in what was at the time an 81-count indictment. Trial counsel argued that the jury could not reasonably be expected to compartmentalize the evidence. In his view, it was impossible for the jury to hear evidence of multiple home invasions and not impute guilt upon the separate and distinct homicides.

The trial court denied the motion when it was made, noting that Mr. Kellam was charged with Racketeering, and that the State alleged he was the ringleader. All the incidents together established that Mr. Kellam was the leader and that the others were following his direction. Moreover, the Court pointed out, as part of the Racketeering charge, the State was alleging a pattern of criminal activity.

Mr. Kellam argues that the trial court's analysis would have been different once Counts 27 - 40 and Counts 41 - 46 were removed from the indictment. In

---

[84] *State v. McKay,* 382 A.2d 260 (Del. Super. 1978).

those counts, the State alleged conduct related to the home invasions of Isiah Phillips on May 18, 2014 and Ashley Moore on August 22, 2014. When they were removed, only three home invasion events remained in the indictment. And in only one of any of those events was someone killed. Indeed, in its closing argument, the State attributed an unrelated motive to the murders than to the other home invasions: retaliation for a fight that preceded the killings involving a man named John Snead. Mr. Kellam argues that the application of the *Getz v. State*[85] factors would have weighed against admissibility of prior bad acts evidence and severance would have been granted.

Additionally, Mr. Kellam argues that appellate counsel was ineffective by failing to raise the severance issue on direct appeal to the Delaware Supreme Court. The Delaware Supreme Court has held that the same *Strickland* test applies to claims of ineffective assistance of appellate counsel.[86] Petitioner must first show that counsel was objectively unreasonable in failing to raise the issue of severance on appeal. While the United States Supreme Court has recognized that appellate counsel need not raise every non-frivolous claim on appeal (encouraging litigants to select strong issues), it is possible to bring a *Strickland* claim based

---

[85] 538 A.2d 726 (Del. 1988).
[86] *Neal v. State*, 80 A.3d 935 (Del. 2013)(citing *Smith v. Robbins*, 528 U.S. 259 (2000)).

on counsel's failure to raise a particular claim on appeal. Where an allegedly ineffective counsel files a merits brief on appeal, the Petitioner on Rule 61 bears the burden of showing that a particular non-frivolous issue was clearly stronger than issues that counsel did present. Citing *Neal,* the Delaware Superior Court has applied the *Strickland* test to claims of ineffective assistance of appellate counsel brought before it in the context of a Rule 61 Motion for Postconviction Relief.[87]

Mr. Kellam argues that severance was a strong issue on appeal. As argued to the trial court in the motion to sever, none of the home invasion victims identified Petitioner as the perpetrator, Petitioner was not arrested during the commission of any of these crimes, there was no confession, there were no forensics, and the evidence of Petitioner's guilt came from alleged co-conspirators testifying for favorable treatment.

Appellate counsel pursued only one issue on appeal: the denial of a motion to exclude recorded wiretap statements allegedly made by Mr. Kellam (see discussion, below). Appellate counsel argued that statements should have been excluded pursuant to Delaware Rule of Evidence 404(b). Challenges to a trial

---

[87]*State* v. *Hunter,* 2018 WL 2085006 (Del. Super. Apr. 25, 2018).

court's evidentiary rulings are only required to meet an abuse of discretion standard.[88] Thus, that appeal was a long shot at best, argues Mr. Kellam, and the severance motion was a stronger issue on appeal.

Had the issue of severance been pursued on appeal, Mr. Kellam believes it might well have been granted. On appeal, the Delaware Supreme Court will reverse the denial of a motion to sever when the defendant demonstrates a reasonable probability that the joint trial caused substantial injustice.[89] Clearly, Mr. Kellam argues, substantial injustice occurred here. Petitioner was convicted on all counts of a sprawling indictment in which a multitude of offenses were joined together under the guise of a "pattern of racketeering activity" in a defective indictment. As argued in the trial court and perfected for appeal, Mr. Kellam argues here that severance was entirely appropriate in this case.

The State counters that all the incidents were correctly tried together because Mr. Kellam and his codefendants were involved in organized crime; their business was to commit home invasions of suspected drug dealers to rob them of money and drugs. In committing those home invasions, including the one that led to the two deaths, the defendants engaged in a common scheme: Mr. Kellam would find a

---

[88]*Zebroski* v. *State,* 715 A.2d 75 (Del. 1998).
[89] *Lloyd v. State,* 249 A.3d 768 (Del 2021).

dealer and his location, direct others where to go, and provide them with guns. Mr. Kellam's assessment of the severance issue fails for one important reason: severance was not appropriate because all the counts stemmed from incidents related to the Racketeering charge. Indeed, in his Trial Counsel Affidavit, Trial Counsel acknowledges that he had no good faith basis to raise the severance issue because the Racketeering charge gave the State the ability to argue that all the charges needed to be tried together in order to prove there was an enterprise committing racketeering activity.

Here, all the charges stemming from the five (later, three) home invasions, including the homicide charges, were part and parcel of the predicate events for the Racketeering charge. Those events were integral to proving racketeering. Thus, the charges stemming from each of the home invasions, including the homicide charges, were inextricably intertwined with the Racketeering charge. "[W]hen an offense charged in an indictment is inextricably intertwined with predicate offenses, the charges should remain joined."[90] In *Taylor v. State,* for example, the Delaware Supreme Court found that the Superior Court had not abused its discretion

---

[90] *State v. Mack,* 2021 WL 4848230, at *12 (Del. Super. Ct. Oct. 18, 2021) (citing *Taylor* v. *State,* 76 A.3d 791,801 (Del. 2013)).

for refusing to sever a gang participation charge from murder, attempted murder, and additional felony charges.[91] The Court held that, because the evidence supporting the charges was inextricably intertwined, it would have been admissible even if the charges had been severed, and "the trial court acted well within its discretion in denying severance."[92]

Whether Mr. Kellam raised the issue again prior to trial, after the State dropped charges stemming from two of the predicate events from the indictment, or on appeal, he needed to demonstrate that the predicate events were not related to the criminal racketeering enterprise.[93] He did not make that argument in his motion to sever, nor does he appear to make a viable argument to that effect in his postconviction motion. "Relatedness exists if the racketeering acts 'have the same or similar purposes, results, participants, victims, or other methods of commission, or otherwise are interrelated by distinguishing characteristics and

---

[91] *Taylor,* 76 A.3d at 801.

[92] *Id. See also Phillips* v. *State,* 154 A.3d 1146, 1159 (Del. 2017) (finding trial court did not abuse its discretion in denying motion to sever charges related to homicides from gang participation-related charges because the evidence in the indictment supporting the charges was inextricably intertwined).

[93] *See Mack,* 2021 WL 4848230, at *1 (noting that when a racketeering charge is involved, predicate offenses are properly joined at trial if they have a "sufficient nexus" to the racketeering charge (citing *Lloyd v. State,* 249 A.3d 768, 776-77 (Del. 2021)).

are not isolated events.'"[94]

Mr. Kellam argues severance was appropriate because the evidence did not tie him to the crimes. He also seems to assert that the homicides were not part of a pattern of racketeering evidence[95] because the other two home invasions did not result in homicides, and the primary motive for the homicides was revenge, not robbery, as it had been for the other home invasions. But Mr. Kellam's arguments ignore the fact that the indicted charges stemming from the three predicate events that were submitted to the jury at trial were sufficiently related to the Racketeering charge to make joinder of all the charges appropriate. And his assertion that none of the evidence connected him to the crimes is belied by the record and, in any case, arguments about weight to be given the evidence and credibility of the State's witnesses are not relevant to assessing whether there was misjoinder of charges.[96]

The State alleged and presented evidence that each home invasion involved Mr. Kellam; that Mr. Kellam and others would rob drug dealers; and that Mr. Kellam

---

[94] *Lloyd,* 249 A.3d at 776-77 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240 (1989)).

[95] *See Lloyd,* 249 A.3d at 776 ("[T]o prove a pattern of racketeering activity, the government must show that the predicate acts are related to the enterprise and they amount to or pose a threat of continued criminal activity.").

[96] *See Poon v. State,* 880 A.2d 236, 238 (Del. 2005) ("[I]t is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts."); *Mack,* 2021 WL 4848230, at *12 (noting that Mack's factual issue about whether the charges should be considered a pattern of racketeering activity was a jury decision).

supplied the guns and told the others who their target was and showed or told them where to go. In addition, even though Mr. Kellam and the others might have wanted retribution for the fight with Snead, they also chose to, and did, rob the victim because he was a drug dealer. Importantly, others also shot at and wounded a victim when they tried to rob him. Just because they happened to kill two victims during the course of a home invasion and robbery does not mean that the event was not related to their criminal enterprise. A renewed motion to sever those charges, or an appeal of the denied motion, was not going to be successful.[97] And neither Trial Counsel nor Appellate Counsel were ineffective for failing to raise the issue again.[98]

I deny this claim.

---

[97] *See Mack,* 2021 WL 4848230, at *11 (denying defendant's request to sever racketeering case into 39 separate trials when charges met the definition for relatedness, "namely, they [had] similar purposes, results, participants, and methods of commission," and recognizing the State's right to meet its burden of proving a pattern of racketeering activity). *See also United States v. Irizarry,* 341 F.3d 273, 290 (3d Cir. 2003) (holding that when all of the criminal conduct charged against the defendant constituted a series of related acts in furtherance of a commonly charged RICO enterprise, there was no misjoinder of separate, unrelated offenses); *United States v. Eufrasio,* 935 F.2d 553, 570 (3d Cir. 1991) (finding district court did not err in refusing to dismiss murder conspiracy charge that was a racketeering predicate; noting "[t]he government had the right to charge and prove every element constituting the RICO charges against [the defendant], ... even if proof of it revealed unsavory aspects of [his] criminal past to the jury").

[98] *Cf Skinner v. State,* 607 A.2d 1170, 1173 (Del.1992) (holding that decision that claim based on underlying substantive issue would not have succeeded precluded a showing of prejudice on claim of ineffective assistance of counsel regarding issue); *Shelton v. State,* 744 A.2d 465, 503 n.183 (Del. 2000) ("[T]he Sixth Amendment does not require counsel to pursue meritless arguments before a court.").

**Recusal from Severance Motion**

Mr. Kellam filed a Motion to Suppress challenging the validity of a search warrant to intercept telephone communications. Because the trial court judge had signed the *ex parte* wiretap warrant, he recused himself from deciding the Motion to Suppress and the Motion was decided by a visiting judge. Mr. Kellam argued that the signing of a warrant based upon probable cause could show a disposition by the Court which would preclude the Court from fairly deciding that issue anew, either on the Motion or during trial.

Now Mr. Kellam argues that Trial Counsel was ineffective for failing to request the trial judge to recuse himself from considering his Motion to Sever. Mr. Kellam further argues that he was denied a fair trial because the trial court judge did not *sua sponte* recuse himself from hearing the Motion to Sever.

The Delaware Judge's Code of Judicial Conduct states that a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned including but not limited to where the judge has personal knowledge of disputed evidentiary facts concerning the proceeding.[99] The Court considers "whether, as a matter of subjective belief, the judge was

---

[99] Delaware Judges Code of Judicial Conduct Rule 2.11.

satisfied that he or she could proceed to hear the case free of bias or prejudice concerning a party."[100]

Mr. Kellam argues that when the trial judge signed the *ex parte* wiretap search warrant, which caused his recusal from considering the Motion to Suppress, the trial judge also tainted his ability to fairly consider the Motion to Sever. The facts that the trial judge learned in signing the warrant were relied upon by the State and the trial judge in denying the Motion to Sever. Mr. Kellam is offended that in such a serious case, the trial judge did not issue a written opinion on the Severance Motion. The trial judge denied the motion from the bench and marked "denied" on a judicial action form. From the bench, the trial judge stated that this was a Racketeering case where the State alleged a pattern of criminal activity.

Mr. Kellam argues that the trial judge's comments reflected the contents of the application and affidavit supporting the interception of wire communications which had been presented to the trial judge previously when the *ex parte* wiretap was authorized. Indeed, the State referenced the wiretap application and affidavit in its response to the trial judge. Mr. Kellam claims that this

---

[100] *Franklin v. State,* 901 A.2d 119 (Del. 2006) (on appeal from the Superior Court in *State v. Franklin,* 2005 WL 3193713 (Del. Super. Nov. 29, 2005)).

must have been heard favorably by a trial judge who had previously reviewed and approved the wiretap application and affidavit.

The State argues that Mr. Kellam's argument is based on the incorrect premise that a judge who signs a warrant must later recuse himself from matters affected by his finding of probable cause for the warrant. "Due process guarantees 'an absence of actual bias' on the part of a judge."[101] To determine whether actual bias is present, the United States Supreme Court has applied an objective standard.[102] "Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'"[103] The Supreme Court has also recognized, however, that the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, and that "most questions concerning a judge's qualifications to hear a case are not constitutional ones,"[104] and are instead answered by state statute, common law, and professional standards.[105] The Court has never held

---

[101] *Williams v. Pennsylvania,* 579 U.S. 1, 8 (2016) (quoting *In re Murchison,* 349 U.S. 133, 136 (1955)).

[102] *Id.*

[103] *Rippo* v. *Baker,* 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin,* 421 U.S. 35, 47 (1975).

[104] *Bracy v. Gramley,* 520 U.S. 899, 904 (1997) (citing *Aetna Life Ins. Co.* v. *Lavoie,* 475 U.S. 813, 828 (1986)).

[105] *Id.*

that due process requires a judge to recuse himself from presiding over a criminal trial after finding there was probable cause to issue a warrant in the case.[106] Indeed, in *Withrow v. Larkin,* the United States Supreme Court noted:

> Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence. . . . We should also remember that it is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around.[107]

Mr. Kellam has not alleged any personal interest or bias on the part of the judge, only that the judge should not have decided the motion to sever because he found probable cause to issue the wiretap warrant and assigned a visiting judge to decide the motion to suppress the warrant. On that basis, Kellam has not established a due process violation.

---

[106] *See Powell v. Link,* 2017 WL 7795393, at *6-7 (E.D. Pa. Nov. 16, 2017) (noting due process does not raise any constitutional barrier against judge's presiding over criminal trial after issuing arrest warrants (citation omitted)), *rep.and recommendation adopted,* 2018 WL 1071926 (E.D. Pa. Feb. 27, 2018), *cert. of appealability denied, Powell v. Superintendent Graterford SCI,'.W* 18 WL 11028198 at *1 (3d Cir. Oct. 29, 2018).

[107] 421 U.S. 35, 56-57 (1975).

Nor can Mr. Kellam show the judge's recusal was warranted under State law. With respect to the Delaware Judges' Code of Judicial Conduct Rule 2.11, the Delaware Supreme Court has held that "the bias envisioned by [the Code of Conduct] is not created merely because the trial judge has learned facts or made adverse rulings during the course of a trial."[108] Moreover, "[t]o serve as a disqualifying factor, the alleged bias ... 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'"[109]

Typically, when a motion to recuse is filed, a judge must undertake a two-step analysis: (1) "[t]he first step requires the judge to be subjectively satisfied that he or she can proceed to hear the cause free of bias or prejudice," and (2) "the second step requires the judge to examine objectively whether the circumstances require recusal because of an appearance of bias sufficient to cause doubt as to the judge's impartiality."[110] As noted above, Mr. Kellam cannot show objective bias merely

---

[108] *Weber v. State,* 547 A.3d 948, 952 (Del. 1988) (citing *Steigler v. State,* 277 A.2d 662, 668 (Del. 1971)).

[109] *Jackson v. State,* 684 A.2d 745, 753 (Del. 1996) (quoting *Los v. Los,* 595 A.2d 381,384 (1991) (citing *U.S. v. Grinnell Corp.,* 384 U.S. 563 (1966))).

[110] *Gattis v. State,* 955 A.2d 1276, 1285 (Del. 2008).

because the judge learned facts about the case from the wiretap warrant.[111] H e

has presented no evidence to support a claim that the judge was subjectively biased

against him. Thus, the trial judge did not err in failing to *sua sponte* recuse himself

from deciding the severance motion, a motion to recuse the judge would not have

been successful, and trial counsel was not ineffective for failing to have filed such a

motion.[112]

I deny this claim.

**Cellular Data Evidence**

One strategy of the defense at trial was to highlight inconsistencies in the

witnesses' testimony to the jury. In closing argument, Trial Counsel argued that the

witnesses were inconsistent, contradictory, and at times outright untruthful. He

---

[111]*See Steigler,* 277 A.2d at 668 ("[T]be mere fact that a Judge has made some pretrial rulings against a given defendant is not in itself sufficient to require his disqualification."), *quoted in Gattis,* 955 A.2d at 1284; *Jackson,* 684 A.2d at 753 ("To require a judge to disqualify himself or herself from further participation in a case where the judge acts as a gatekeeper for the admissibility of evidence would impose an unreasonable and totally impracticable standard."). *See also Liteky v. United States,* 510 U.S. 540, 555-56 (1994) ("[O)pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

[112] *See Hurst* v. *State,* 2013 WL 85109) at *2 (Del. Jan. 7, 2013) (finding no plain error for judge not to *sua sponte* recuse himself from presiding over the trial simply because he approved the search warrant application); *Powell,* 2017 WL 7795393, at *6-7 (finding that alleging no personal interest by the judge beyond "a general disinclination to overturn his own ruling" was inadequate to state a constitutional violation as a matter of law); *Skinner,* 607 A.2d at 1173; *Shelton,* 744 A.2d at 503 n.183.

argued that the witnesses testified to save themselves in exchange for plea deals offered to them by the State. Trial Counsel also argued the lack of corroboration of the witnesses' testimony. The State acknowledged that the witnesses' testimony was inconsistent on when and by whom the order to kill the murder victims was given.

Mr. Kellam now argues that it was ineffective of Trial Counsel to fail to introduce contradictory cell phone data evidence challenging this testimony. Discovery materials provided to Trial Counsel by the State in advance of trial included an AT&T Phone Mobility Usage Report for one of the key witnesses, which arguably showed no communication between that witness and Mr. Kellam regarding the kill order. Mr. Kellam argues that Trial Counsel should have called an expert witness to testify that there was no such communication. Failure to present this Report to contradict the testimony about the kill order, according to Mr. Kellam, fell below an objective standard of reasonableness and, had the evidence been presented, the outcome of trial would likely have been different under the *Strickland* test.

This case was a battle of witness credibility. The witnesses provided different renditions of facts related to the one thing that was not corroborated in the murders: Mr. Kellam's involvement. Mr. Kellam argues that this evidence, which would have

contradicted the kill order testimony, should have been shown to the jury, and that without the kill order testimony, the jury would not have convicted Mr. Kellam of murder.

In his Trial Counsel Affidavit, Trial Counsel asserts that he had three strategic reasons not to introduce the evidence from the cellphone records: (1) he had plenty of other impeachment evidence to work with; (2) he felt the jury's interest was flagging and he believed that confronting a witness about those records would prolong an already long cross-examination without much benefit; and (3) he thought the cellphone evidence would hurt more than it helped because people, including Kellam, had been using other people's phones, and "the State would have easily been able to rebut this phone issue on redirect by refreshing [the witness'] recollection with his prior statements."

The State argues that Mr. Kellam can show neither that Trial Counsel's decision was objectively unreasonable, nor that he was prejudiced thereby. First, Mr. Kellam was convicted as an accomplice of two counts of first-degree felony murder. Thus, it did not matter whether the State could prove that Mr. Kellam gave the kill order; it was sufficient for the State to show that he acted as an accomplice to the others in committing the home invasion that resulted in the two deaths. The State argues that it presented significant evidence that that was

the case. Multiple witnesses testified that, among other things, Mr. Kellam provided the guns, ordered the robbery, and instructed where it was to occur. Apart from the "kill order" evidence, the State presented a strong case that Mr. Kellam aided, counseled, or agreed to aid the others in the commission of the home invasion, which foreseeably resulted in the two murders.[113]

Second, Trial Counsel's reasons for not introducing the evidence were strategic, and not objectively unreasonable. Trial Counsel is correct that he had sufficient other impeachment evidence, and he correctly recognized that the phone call impeachment evidence was not going to make a difference in the case.

I agree with the State that Trial Counsel's reasons for not introducing this evidence were strategic and not objectively unreasonable. Trial counsel was not ineffective for failing to introduce the cellphone evidence.

I deny this claim.

---

[113] *See Hassan-El v. State,* 911 A.2d 385, 394-95 (Del. 2006) ("[I]f the 'accomplice' intended to commit the underlying felony, i.e., armed robbery, then he or she is also guilty of any 'consequential crime' that is committed, *i.e.,* murder, as long as the consequential crime was a 'foreseeable consequence' of the armed robbery… (citing *Claudio v. State,* 585 A.2d 1278, 1281-82 (Del.1991); *Hooks v. State,* 416 A.2d 189, 197 (Del. 1980)); 11 *Del.* C. § 271 (providing a person is liable for the conduct of another when "intending to promote or facilitate the commission of the offense the person … aids, counsels or agrees or attempts to aid the other person in planning or committing it"); A1431-33 (accomplice liability jury instruction).

**Felony Murder Jury Instruction**

Mr. Kellam next argues that Trial Counsel was ineffective by failing to object to the felony murder instruction given to the jury. The trial judge erroneously defined felony murder for the jury when he said: "in order to find the defendant guilty of murder in the first degree, you must find... the person's death occurred in the course of or in furtherance of the defendant's commission of a felony."[114] The "in furtherance of" language applied by the trial court was from a pre-2004 version of the statute. However, when Mr. Kellam went to trial, the felony murder statute had been revised to omit the "in furtherance of" language. The felony murder statute now reads: "a person is guilty of murder in the first degree when ... while engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death of another person."[115]

In 2003, under the old "in furtherance of" language, the Delaware Supreme Court held that "the felony murder statute 'not only requires that the murder occur during the course of the felony but also that the murder occur to facilitate

---

[114] The felony murder jury instruction language was repeated four times; in one instance it was incorrect and in three instances it was correct. This is of no consequence to me; the jury could have decided on the wrong language.
[115] 11 *Del. C.* § 636.

commission of the felony.'"[116] In direct response to that case, the General Assembly amended the felony murder statute in 2004 to remove the language that the Supreme Court had interpreted as requiring the murder to have been committed to facilitate the commission of the underlying felony.[117]

Mr. Kellam asserts that Trial Counsel's failure to object to the erroneous jury instruction at trial constitutes ineffective assistance of counsel under *Strickland*. "The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case. A determination that defense counsel's conduct was 'the result of reasonable professional judgment' or 'within the wide range of professional competent assistant' will defeat an ineffective assistance claim."[118] "A lawyer's decision to refrain from objecting to a faulty jury instruction or requesting a clarifying one can be perfectly reasonable if it is the product of reasonable professional judgment and strategic considerations."[119]

The Delaware Supreme Court has said that "in evaluating the propriety of a jury charge, the jury instructions must be viewed as a whole. A jury instruction

---

[116] *Chao v. State,* 931 A.2d 1000, 1000 (Del. 2007) (citing *State v. Williams*, 818 A.2d 906, 913 (Del. 2003, amending 2002 decision).

[117] *Comer v. State,* 977 A.2d 334, 338 (Del. 2009) (quoting 11 *Del.* C. § 636(a)(2)).

[118] *Ray v. State,* 280 A.3d 627 (Del. 2022).

[119] *Id.*

61

is not a ground for reversal if 'it is reasonably informative, not misleading and does not undermine the jury's ability to intelligently perform its duty. Although a party is not entitled to a particular jury instruction, a party does have the unqualified right to have the jury instructed with a correct statement of the substance of the law. An instruction which tracks the statutory language is adequate to inform the jury."[120]

In *Ray v. State,* a recent Delaware Supreme Court decision, the Court held that use of an erroneous felony-murder instruction that did not accurately state the law, which counsel failed to object to or raise on appeal, merited postconviction relief.[121] The facts of the *Ray* and *Kellam* cases are parallel in several ways. Mr. Ray was convicted of felony murder, receiving a life sentence plus twenty years.[122] Mr. Kellam was also convicted of felony murder and received multiple life sentences. Mr. Ray directly appealed his conviction and the denial of his first postconviction motion.[123] Mr. Ray's second appeal argued an ineffective assistance of counsel claim on the grounds that his trial and appellate counsel overlooked the fact that the felony murder jury instruction was

---

[120] *Lloyd v. State,* 152 A.3d 1266 (Del. 2016).
[121] *Ray v. State,* 280 A.3d at *3.
[122] *Id.* at *2.
[123] *Id.*

"obviously flawed" and did not accurately reflect the current law.[124] Mr. Kellam raises a nearly identical claim here. The *Ray* jury instruction that was given at the close of the trial included outdated felony murder elements requiring that the murders occurred "in furtherance of the commission or attempted commission of any felony."[125] This is precisely the same language, reflective of the outdated statute and not the current statute, that was incorporated into Mr. Kellam's jury instructions.

The Supreme Court in *Ray* identified the defining issue as whether it would have reversed the conviction on direct appeal had it been apprised of the fact that it

> rested on a jury instruction that, in addition to being outdated and incorrect, referred to potential accomplice liability without defining that concept. The instruction also improperly cleared a new path to a finding that Ray was guilty of first-degree murder. ... [T]he instruction told the jury that Ray could be held responsible for first-degree felony murder even upon a finding that he had not caused [the victim's] death if it determined that his "accomplice" had done so.[126]

---

[124]*Id.* at *4.
[125]*Id.* at *15.

[126] *Ray,* 280 A.3d at 644-45.

Mr. Kellam argues that the language "in furtherance of" in the felony murder jury instruction served to further emphasize his guilt by association with his accomplices, and it strengthened the idea that he could be held responsible for the crimes of his accomplices. This misdirection was not tempered by a § 274 instruction (see discussion, below).

The State argues that the *Ray* is distinguishable from *Kellam* on the jury instruction issue. The *Ray* jury received an erroneous felony murder instruction but no accomplice liability instructions, neither the § 271 accomplice liability instruction nor the § 274 *Chance* instruction. In *Ray*, using the language "in furtherance of" thus introduced a theory of accomplice liability that the State did not argue or present evidence for. The Superior Court had denied the State's request for an accomplice liability instruction under § 271 as lacking an evidentiary basis. In *Ray,* therefore, the jury instruction contained language about the defendant's potential role as an accomplice without providing further context. In *Kellam*, on the other hand, the Superior Court approved the State's accomplice liability theory and instruction which, argues the State, puts the felony murder instruction in context. Although Trial Counsel, as well as the State and the Superior Court, should have noticed and requested removal of the outdated language from the felony murder instruction, the language was not likely to have misled the jury or changed the result

64

of Kellam's trial. In *Ray*, it was ultimately the addition of the incorrect accomplice liability language to the felony murder jury instruction that convinced the Delaware Supreme Court that the instruction prejudiced Mr. Ray's case. No such flaw existed in Mr. Kellam's instruction, and thus Mr. Kellam cannot show he was prejudiced by one mention of the outdated language in his felony murder jury instruction.

As stated above, in his Supplemental Trial Counsel Affidavit, Trial Counsel simply states that he failed to notice and object to the outdated language in the felony murder jury instruction, and offers no further rationale for his failure to object to the incorrect jury instruction at trial.

In my view, the defective felony murder instruction given in this case runs afoul of *Ray* and falls within the rationale of our Supreme Court in that case. To use the language of *Ray*, the instruction may have improperly cleared a new path for the jury to find that Mr. Kellam was guilty of first degree felony murder. The instruction told the jury that Mr. Kellam could be held responsible for first degree felony murder even upon a finding that he had not caused the victims' deaths if it determined that his accomplices had done so. This allowed the jury to hold Mr. Kellam responsible for the crimes of his accomplices.

Under the two prongs of *Strickland*, failure to object to this jury instruction was objectively unreasonable, and it is possible that the outcome of the jury's

verdict could have been different had the proper instruction been given.

I grant this claim. The two felony murder convictions are vacated. Those convictions which are inextricably linked to the felony murder convictions must also be vacated. I asked counsel at oral argument to address the impact of vacating the two felony murder convictions, specifically which other convictions must also be vacated and which ones survive. In my view, in addition to the vacation of the murder conviction of Count 3, the three related convictions for Possession of a Firearm during the Commission of a Felony (Counts 4, 5 and 6) must also be vacated. Moreover, in addition to the vacation of the murder conviction of Count 8, the three related convictions for Possession of a Firearm during the Commission of a Felony (Counts 9, 10 and 11) must also be vacated.

### Failure to Request § 274 *Chance* Instruction (Degrees of Crime)

Mr. Kellam further argues that the absence of a § 274 *Chance* instruction removed another guardrail on the road to conviction, prejudicing him, and that he might not have been convicted of felony murder, assault, robbery, and home invasion had the jury been properly instructed.

In Mr. Kellam's case, the § 271 instruction on its own did not adequately

66

instruct the jury on the individualized consideration required under § 274.[127]  11 *Del. C.* § 274 provides that "when, pursuant to § 271 of this title, two or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance."[128] It is undisputed that Mr. Kellam was charged on a theory of accomplice liability and that as a matter of law felony murder, assault and robbery are crimes of degrees. Consequently, the jury could have been instructed specifically on the need to consider Mr. Kellam's individualized mental state and individual accountability.

Because Delaware does not distinguish between principal and accessories under accomplice liability,[129] there is a two-step analysis that the jury must make in order to find a defendant guilty on a theory of accomplice liability where the charged offense is one divided into degrees.[130] First, it must determine if the defendant was an accomplice to a criminal offense.[131] Second, it must determine

---

[127] *Johnson v. State,* 711 A.2d 18, 30 (Del. 1998).
[128] 11 *Del. C.* § 274.
[129] *Allen v. State,* 970 A.2d 203 (Del. 2009).
[130] *Id.; Johnson,* 711 A.2d at 31.
[131] *Johnson,* 711 A.2d at 31.

what degree of the offense the defendant committed, which requires an individualized consideration of the defendant's mental state and culpability for aggravating facts or circumstances.[132]

Mr. Kellam argues that the jury instructions in his case omitted substantial legal principles and as a result did not substantively comply with the Delaware Superior Court rules. While an acceptable accomplice liability instruction was given in Mr. Kellam's case, there was no instruction given that meets the criteria set forth in § 274. Mr. Kellam argues that this oversight created a gap in the substantive law on which the jury was asked to evaluate his case.

It does not matter that Mr. Kellam did not raise the issue at trial because this is a question of law.[133] The relevant questions are: Were the jury instructions wrong as a matter of law? And did the errors undermine the jury's ability to "intelligently perform its duty in returning a verdict?"[134]

**Felony Murder**

In *Chance v. State,* the Delaware Supreme Court stated, "As a matter of Delaware law, the jury was required to distinguish between Chance's liability for

---

[132] *Id.*
[133] *Chance v. State,* 685 A.2d 351,352 (Del. 1996). *See also Allen,* 970 A.2d at 203.
[134] *Chance,* 685 A.2d at 354.

the offense of homicide and Chance's culpability for the degree of homicide, i.e., the crime of Murder in the Second Degree, Manslaughter or Criminally Negligent Homicide."[135] The culpability for the degree of the crime is dependent on the jury's assessment of the defendant's own culpable mental state, without regard to another participant's guilt for a different degree of homicide.[136]

Mr. Kellam's awareness of, and involvement in, the deaths that were incidental to the January 13, 2014 home invasion were disputed. Under the two-step review and the § 274 standard, it is possible that the jury could have found Kellam complicit in the planning and implementation of the home invasion, but not guilty of his accomplices' decisions to kill the two victims, or at least not culpable to the same degree. Mr. Kellam was not present at the scene of the murders. There was competing evidence as to the motivation for the murders and where or when the "kill order" was given. There was competing cell phone data (which Trial Counsel did not introduce, as discussed above) that contradicted that Mr. Kellam gave the "kill order." Even if Mr. Kellam did plan home invasions in order to commit robberies, he denied planning or ordering

---

[135] *Id.* at 359.
[136] *Id.*

murders. However, without the § 274 *Chance* instruction, Mr. Kellam argues that the jury could have erroneously attributed guilt for the murders to him.

The State responds that the facts of the case did not support a § 274 *Chance* instruction and Trial Counsel's defense would have been stymied by a request for such an instruction. Indeed, in his Supplemental Trial Counsel Affidavit, and as discussed above, Trial Counsel states that **he intentionally** did not request a § 274 instruction for three reasons. First, this was an "all or nothing" case. His strategy was to obtain not guilty verdicts. Neither he nor Mr. Kellam wanted a compromise lesser included offense verdict. Moreover, Trial Counsel did not view Murder Second Degree verdicts as a win for Mr. Kellam. With all the additional charges, such verdicts would have put Mr. Kellam in prison for life anyway. Second, Trial Counsel did not believe there was any factual basis to request a § 274 *Chance* instruction. The trial judge would not have given a lesser-included instruction if there was no factual basis in the record for it. Third, Trial Counsel strongly believed that any resort to lesser-included offenses would have undermined his credibility with the jury.

In my view, what Mr. Kellam fails to recognize is that with any lesser included offense instruction there must be a rational factual basis in the evidence

70

to support the instruction. "An accomplice level of liability instruction is not required unless requested for the same reasons as a lesser included offense instruction."[137] Such an instruction can be given only if there is a rational factual basis in the evidence to support it.[138] And just as one may waive his right to lesser offense instructions available under other statutory provisions, one can choose as a strategic matter to avoid possible conviction of lesser offenses under § 274. Such was the case here, and under *Strickland* I will defer to Trial Counsel's strategic judgment. Based on the State's theory and Mr. Kellam's chosen defense, there simply was no rational factual basis to support an argument that Mr. Kellam negligently caused the two deaths.[139] Either Mr. Kellam was not involved in directing the robberies and murders, in which case he was not guilty, or he was involved, in which case he was guilty of recklessly causing the deaths. A person cannot send others with guns to rob drug dealers and yet be unaware that by doing so he is creating a

---

[137] *State v. Dickinson,* 2012 WL 3573943, at *6 (Del. Super. Ct. Aug. 17, 2012), *aff'd,* 2013 WL 1296263 (Del. Mar. 28, 2013).

[138] *Erskine v. State,* 4 A.3d 391, 395-96 (Del. 2010) (noting that a fundamental underpinning to all jury instructions is that there must be a factual basis to support the instruction); 11 *Del. C.* § 206(c) ("The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.").

[139] *See Lawrie* v. *State,* 643 A.2d 1336, 1341 (Del. 1994) (explaining that the evidence must support a jury verdict convicting the defendant of the lesser crime rather than the indicted one to justify a lesser-included offense instruction (citing *Ward v. State,* 575 A.2d 1156, 1159 (Del. 1990)).

substantial risk that death will result.[140] Moreover, Trial Counsel had no strategic reason to request the lesser included offense instruction because it was not consistent with the defense.[141] Trial Counsel's failure to request a § 274 *Chance* instruction was not objectively unreasonable. And the lack of such an instruction does not change the fact that Mr. Kellam cannot show he suffered prejudice therefrom.

**Other Charges**

Putting the felony murder charges aside, Mr. Kellam expanded his argument to include a claim that Trial Counsel also should have requested *§ 274 Chance* instructions for the home invasion, robbery, and assault charges. Trial Counsel addressed this expanded argument in his Second Supplemental Trial Counsel Affidavit, and the State did so in its Supplement After Oral Argument. I find Mr. Kellam's expanded claims unavailing. In my view, those

---

[140]*See Lawrie,* 643 A.2d at 1341 ("As explained in the 1973 commentary to the Delaware Criminal Code, 'in the case of criminal negligence the actor is unaware of the risk his conduct is creating, whereas in the case of recklessness he is aware.'" (quoting Del. Crim. Code with Commentary at 31)).

[141] *Cf Chrichlow v. State,* 2012 WL 3089403, at *2 (Del. Jul. 30, 2012) (finding trial counsel not ineffective for failing to pursue an accomplice "level of liability" jury instruction because it would have undermined his "all or nothing" approach and would have weakened his case); *Dickinson,* 2012 WL 3573943, at *7 (finding trial counsel's choice not to request lesser-included offense accomplice liability instruction was reasonably professional trial conduct because the instruction was inconsistent with defendant's "all or nothing" defense).

charges do not logically support § 274 *Chance* instructions with respect to *mens rea* and such jury instructions were not rationally supported by the evidence. Under *Strickland*, I defer to Trial Counsel's trial strategy and do not find his strategic decisions to be objectively unreasonable. Nor can Mr. Kellam demonstrate that he suffered prejudice therefrom, or that the results of the trial would have been different.

### Home Invasion

A *§* 274 *Chance* instruction was not appropriate for Mr. Kellam's three home invasion charges because home invasion is not a crime divided into degrees based on his mental culpability. However, the Court could have instructed the jury based on Mr. Kellam's degree of accountability for the aggravating factor: that one of the participants was armed with a deadly weapon.[142] To convict Mr. Kellam of home invasion, the State had to prove that (1) he "intended to promote or facilitate the commission of conduct" resulting in home invasion; (2) he "aided, counseled, or agreed to aid" the other defendants in planning or committing the home invasion; and (3) one of the defendants knowingly entered or remained unlawfully in a dwelling that was occupied with

---

[142] *See* 11 *Del. C.* §826A; *Allen,* 970 A.2d at 213-14.

intent to commit a felony therein, a codefendant committed one of the listed felonies, and a codefendant was armed with a deadly weapon at the time.[143] If the evidence rationally supported a finding that Kellam did not know a participant was going to be armed with a gun, he theoretically could have been acquitted of home invasion.

However, it does not follow *a fortiori* that Trial Counsel was ineffective for failing to have requested such an instruction. Because home invasion is not a crime divided by degrees of culpability, a § 274 *Chance* instruction would have been inconsistent with Trial Counsel's all or nothing defense. If the jury believed Mr. Kellam's defense that he was not the mastermind behind the home invasions, it would have acquitted him of home invasion. The evidence did not rationally support a conclusion that Mr. Kellam could have been involved in the planning of the home invasions without having knowledge that guns were to be used. The use of guns was a detail inextricably intertwined in the planning process.

Moreover, Mr. Kellam cannot show prejudice from the Court's failure to give a § 274 *Chance* instruction for the home invasion element of possession of

---

[143] *See* 11 *Del. C.* § 826A(a); 11 *Del. C.* § 271.

a deadly weapon. The Court instructed the jury with respect to the possession of a firearm during the commission of a felony ("PFDCF") charges that Mr. Kellam had to know that his codefendants possessed a deadly weapon for him to be found guilty of those charges. The jury convicted Mr. Kellam on all but three of the PFDCF charges,[144] indicating it believed that he knew his codefendants possessed the weapons. As such, Mr. Kellam cannot show that the result of his trial would have different had the jury been given a similar instruction for the home invasion charges.

**Robbery**

A § 274 *Chance* instruction was not appropriate as to *mens rea* for Mr. Kellam's robbery and attempted robbery charges because all degrees of robbery and attempted robbery require the same *mens rea*: intentional conduct.[145] The relevant aggravating factor that increased the robbery charges from robbery in the second degree to robbery in the first degree in was that a participant in the crime

---

[144] The jury acquitted Mr. Kellam of the PFDCF charges stemming from the possession of a firearm by an unknown male during the home invasion and attempted robbery of Milton Lofland. The jury convicted Mr. Kellam of the other PFDCF charges stemming from that incident.

[145] *Richardson v. State,* 3 A.3d 233, 237 (Del. 2010) (noting court had previously held Richardson's robbery and attempted murder charges did not warrant *Chance* instructions because all the underlying offenses required the same *mens rea*); 11 *Del.* C. §§ 831 & 832.

displayed what appeared to be a firearm. As with the home invasion charges, the evidence did not rationally support conviction of the lesser-included offense of robbery in the second degree based on the idea that Mr. Kellam was unaware that one of his codefendants was going to display a firearm during the Nelson and Hopkins murders and the Foster robbery. Trial Counsel's failure to request such an instruction was not objectively unreasonable. Moreover, as with charges, the jury's convictions of Mr. Kellam on all but three of the PFDCF charges indicated that it believed that Mr. Kellam knew his codefendants had firearms. Thus, Mr. Kellam cannot show prejudice from Trial Counsel's failure to request a *§ 274 Chance* instruction for the robbery charges.

**Assault**

Kellam was charged with three counts of assault: (1) assault in the second second degree for a codefendant intentionally or recklessly causing physical injury to Milton Lofland by means of a deadly weapon; (2) assault in the third degree for a codefendant intentionally or recklessly causing physical injury to Connie Steward; and (3) assault in the second degree for a codefendant intentionally or recklessly causing physical injury to Azel Foster by means of a dangerous instrument. A *§ 274 Chance* instruction would have been

76

inappropriate for the Steward assault because no lesser culpability other than innocence was appropriate. The Court could have instructed the jury on the assault in the second degree charges that Mr. Kellam could instead be found guilty of assault in the third degree if the jury assessed that (1) his mental culpability for the Lofland and Foster assaults was criminal negligence instead of intentional or reckless, or (2) the evidence supported a finding that Foster or Lofland were not assaulted with a deadly weapon or dangerous instrument.[146] But the evidence did not rationally support such an instruction. The evidence clearly established that Foster was injured by a gunshot wound and that Lofland was hit in the head with a gun. The circumstances of those incidents simply did not warrant a finding that the codefendants had acted with criminal negligence in shooting at Foster or hitting Lofland over the head with a gun.[147] Thus, Trial Counsel was not ineffective for failing to request a *§ 274 Chance* instruction for the second degree assault charges. Nor can Mr. Kellam show prejudice from Trial Counsel's

---

[146] *See* 11 *Del.* C. § 611(2) (providing a person is guilty of third degree assault if "[w]ith criminal negligence [he] causes physical injury to another person by means of a deadly weapon or a dangerous instrument").

[147] *Lawrie v. State,* 643 A.2d 1336, 1341 (Del. 1994) ("As explained in the 1973 commentary to the Delaware Criminal Code, 'in the case of criminal negligence the actor is unaware of the risk his conduct is creating, whereas in the case of recklessness he is aware.'" (quoting Del. Crim. Code with Commentary at 31)).

failure to request a § 274 *Chance* instruction for the assault charges.

Assuming *arguendo* that the § 274 *Chance* instruction should have been given, as discussed above, not all the convictions must be vacated and retried. The two Home Invasion convictions, and the **Possession of a Firearm During the Commission of a Felony** convictions associated therewith, remain standing. The Home Invasion statute permits as a predicate Robbery in any degree.[148] The only two degrees of Robbery are First Degree[149] and Second Degree.[150] In this case, the predicate felony was First Degree Robbery. Since any § 274 *Chance* instruction would have required the jury to find either First Degree Robbery or Second Degree Robbery as a predicate, and since either of these felonies is a predicate for Home Invasion, any failure to separate First Degree Robbery from Second Degree Robbery would have had no impact on the jury's verdict.

I deny this claim.

**Cumulative Effect of Errors**

Mr. Kellam's final claim asserts that, even if none of the individual claims discussed above is sufficient to establish that he is entitled to relief, all the claims

---

[148] 11 *Del. C.* § 826A.
[149] 11 *Del. C.* § 832.
[150] 11 *Del. C.* § 831.

when taken together as a whole have a cumulative effect which rises to the level of reversible error.

Although Mr. Kellam has established an error by Trial Counsel with respect to his failure to object to erroneous jury instructions, undermining his felony murder and related convictions, he has failed to show that he is entitled to relief based on cumulative errors with respect to the remaining convictions. "Where there are multiple errors in a trial, the Court weighs their cumulative effect to determine if, combined, they are 'prejudicial to substantial rights [so] as to jeopardize the fairness and integrity of the trial process.'"[151] Mr. Kellam argues that he has demonstrated that, absent Trial Counsel's errors, the outcome of his trial with respect to the remaining convictions would have been different. I disagree. There is a plethora of evidence and other factors that support the jury verdict on the remaining charges.

I deny this claim.

**Conclusion**

"'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after

---

[151] *Johnson v. State*, 129 A.3d 882 (Table), 2015 WL 8528889, at *3 (Del. Dec. 10, 2015).

conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'"[152] Despite our Supreme Court's prohibition on analyzing trial counsel's performance through the "distorting effects of hindsight,"[153] some of the arguments set forth in the original Amended Petition do just that.

In light of the highly deferential approach I should take when reviewing such claims, and the strong presumption that Trial Counsel's conduct was professionally reasonable, Mr. Kellam has not shown that Trial Counsel's representation – other than with respect to the erroneous felony murder jury instruction -- fell below an objective standard of reasonableness or that there is a reasonable probability that, but for Trial Counsel's error with respect to the jury instructions, the result of the case on the remaining convictions would have been different.

"The defendant is entitled to a fair trial, not a perfect trial."[154] In my view, except for the erroneous felony murder jury instruction, Mr. Kellam received a

---

[152] *Wright,* 671 A.2d at 1356-57 (quoting *Strickland v. Washington,* 466 U.S. at 689).
[153] *Albury,* 551 A.2d at 59.
[154] *State v. Swan*, 2020 WL 7259626, at *20 (Del. Super. Feb. 21, 2020), *aff'd,* 248 A.3d 839 (Del. 2021).

fair trial, and his dissatisfaction with the outcome neither changes that fact nor demonstrates that, with respect to the remaining convictions, Trial Counsel provided ineffective assistance of counsel under the standards set forth in *Strickland*.

For the reasons discussed above, the Petition is **GRANTED IN PART** with respect to Mr. Kellam's two convictions for First Degree Murder (Counts 3 and 8)) and six of his convictions for Possession of a Firearm during the Commission of a Felony (Counts 4, 5, 6, 9, 10 and 11). I vacate those convictions. All the remaining convictions stand.

The State shall notify me if it decides to retry Mr. Kellam on the vacated convictions.

The remaining claims under Mr. Kellam's Petition are **DENIED**.

**IT IS SO ORDERED**.

/s/ Francis J. Jones, Jr.
Francis J. Jones, Jr., Judge

Attachment (Exhibit A)

cc:     *Prothonotary*
        Patrick J. Collins, Esquire

# EXHIBIT A

01/13/14 Incident

| Count | Years Level V | Conviction |
|---|---|---|
| 1 | 25 | Racketeering |
| 3 | Life | Murder (Nelson) |
| 4 | 25 | PFDCF (Nelson Murder) Caliber 40 |
| 5 | 25 | PFDCF (Nelson Murder) Caliber 22 |
| 6 | 25 | PFDCF (Nelson Murder) Caliber 32 |
| 8 | Life | Murder (Hopkins) |
| 9 | 25 | PFDCF (Hopkins Murder) Caliber 40 |
| 10 | 25 | PFDCF (Hopkins Murder) Caliber 22 |
| 11 | 25 | PFDCF (Hopkins Murder) Caliber 32 |
| 12 | 25 | Home Invasion |
| 13 | 25 | PFDCF (Home Invasion) Caliber 40 |
| 14 | 25 | PFDCF (Home Invasion) Caliber 22 |
| 15 | 25 | PFDCF (Home Invasion) Caliber 32 |
| 16 | 25 | Robbery 1 (Hopkins) |
| 17 | 25 | PFDCF (Hopkins Robbery) Caliber 40 |
| 18 | 25 | PFDCF (Hopkins Robbery) Caliber 22 |
| 19 | 25 | PFDCF (Hopkins Robbery) Caliber 32 |
| 20 | 25 | Robbery 1 (Nelson) |
| 21 | 25 | PFDCF (Nelson Robbery) Caliber 40 |
| 22 | 25 | PFDCF (Nelson Robbery) Caliber 22 |
| 23 | 25 | PFDCF (Nelson Robbery) Caliber 32 |
| 24 | 2 | Conspiracy 2 |

SUBTOTAL        477 + 2 Life

12/11/14 Incident

| | | |
|---|---|---|
| 46 | 25 | Home Invasion (Lofland) |
| 47 | 25 | PFDCF (Home invasion) |
| 48 | 25 | PFDCF (Home Invasion) |
| 51 | 25 | Attempted Robbery 1 |
| 52 | 25 | PFDCF (Attempted Robbery 1) |
| 53 | 25 | PFDCF (Attemptrd Robbery 1) |
| 57 | 25 | PFDCF (Assault 2) |
| 58 | 25 | PFDCF (Assault 2) |
| 61 | 1 | Assault 3 |
| 62 | 2 | Conspiracy 3 |

SUBTOTAL        203

12/14/14 Incident

| | | |
|---|---|---|
| 63 | 25 | Home Invasion (Foster) |
| 64 | 25 | PFDCF (Home Invasion) |
| 65 | 25 | PFDCF (Home Invasion) |
| 79 | 5 | Disguise |
| 80 | 2 | Conspiracy 2 |
| 81 | 7 | Assault 2 |
| | | |
| SUBTOTAL | 89 | |
| | | |
| TOTAL | 769 + 2 Life | |